**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANTHONY PITALE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 11 C 00921 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| DAN HOLESTINE, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Anthony Pitale, former Chief Operating Officer of American Career College and West Coast University, brings this suit against Defendant Dan Holestine, former Vice President of Marketing at the same institutions, alleging that Holestine made statements about him that are actionable as defamation *per se* and false light invasion of privacy under Illinois law.[1] R. 5. Before the Court is Holestine's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 15. As explained below, the motion is granted in part and denied in part.

**I.**

At this stage in the litigation, the Court accepts Pitale's allegations as true and draws reasonable inferences in his favor. *Ashcroft v. al-Kidd*, – U.S. –, 131 S. Ct. 2074, 2079 (2011). Pitale was the COO of American Career College from June 2008 through July 2010. R. 5 ¶ 6. Holestine reported to Pitale from June 2008 until Holestine

[1]The Court has jurisdiction pursuant to 28 U.S.C. § 1332. *See* R. 4, 5 (amended complaint fixing jurisdictional allegations). Citation to the docket is "R." followed by the entry number, and when applicable, the page or paragraph.

resigned in June 2010. *Id.* ¶¶ 7-8. Pitale remained COO until July 2010. *Id.* ¶ 6. After Holestine's resignation, Pitale alleges that Holestine made false statements in the Wikipedia entries for Eldorado College (a college that Pitale owned some time before working at American Career College) and American Career College, as well as in a post on Holestine's "friendofthestudent" blog titled "American Career College Executive Wall of Shame No. 1." *Id.* ¶¶ 9-27.[2]

Pitale alleges that several statements made by Holestine were defamatory. First, in the Eldorado College Wikipedia entry, Holestine stated that "a financial scandal led to the revocation of [Eldorado College's] accreditation, as well as its eligibility to receive funds from its alumni and various charities." R. 15-2, Exh. B. Next, in the American Career College Wikipedia entry, Holestine said, "[t]he schools were closed by the Department of Education due to high default rates after a battle with regulators over questionable refund policies from 1990-1994." R. 15, Exh. C. These statements have been removed from the respective entries. R. 5 ¶¶ 14, 18.

As for the blog post, Pitale points to Holestine's statements that Pitale "le[]d schools amid a scandal around short changing the students and state government on student refunds . . . ," *id.* ¶ 24, that Eldorado was "closed by the Department of Education for student default rate violations that exceeded 25% for three consecutive

[2]Pitale did not attach copies of the offending webpages to his complaint. R. 5. In his motion to dismiss, R. 15, Holestine attached the: "About" section of the friendofthestudent blog and the offending blog post, R. 15-1, Exh. A; the Wikipedia Eldorado College entry, R. 15-2, Exh. B; and the Wikipedia American Career College entry, R. 15-3, Exh. C. The Court is permitted to consider these documents. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) (court may consider documents not attached to a complaint if they are referred to by the complaint and central to it).

years," *id.* ¶ 25, and that Pitale engaged in "unsavory actions" and "inappropriate education management practices," *id.* ¶ 23. Pitale also alleges that the blog "implies [he] was banned from a school because he committed a crime," but does he does not identify specific statements that he believes imply that fact. *Id.* ¶ 22. The blog post also features a picture of Pitale, *id.* ¶ 21, and includes links to archived versions of the Eldorado College and American Career College Wikipedia entries,[3] which Pitale contends republishes the Wikipedia statements, *id.* ¶¶ 19-20.

Pitale's complaint sets out five counts of defamation *per se* and two counts of false light invasion of privacy. R. 5. Counts 1 and 2 allege defamation *per se* based on the two Wikipedia entries because the statements impute that Pitale lacked integrity in performing his duties, *id.* ¶¶ 29-30 (Count 1), and prejudice him in his profession, *id.* ¶ 33 (Count 2). Count 6 alleges a false light invasion of privacy claim based on the Wikipedia entries. *Id.* ¶¶ 44-50. For the blog statements, Count 3 alleges a defamation *per se* claim that alleges that the blog statements impute that Pitale committed a crime, *id.* ¶ 36, and Counts 4 and 5 allege defamation *per se* claims for imputing a lack of integrity in performing duties and prejudicing Pitale in his profession, respectively, *id.* ¶¶ 39, 42. Count 7 alleges a false light claim based on the blog statements. *Id.* ¶¶ 51-57.

[3]The link on the blog post is actually a link to a prior blog post, and that prior post reproduces the Wikipedia entries.

**II.**

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And the allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 129 S. Ct. at 1950.

**III.**

Holestine argues that the statements—those in the Eldorado College entry on Wikipedia, the American Career College entry on Wikipedia, and the blog post —cannot serve as the basis for either a defamation or a false-light claim. He relies on various protections that are built into the law of defamation. The First Amendment does place a high value on the freedom of speech, and that value takes concrete form in the law's refusal to impose liability for speech unless certain hurdles are overcome. The speech must state a false fact, not merely an opinion. *Madison v. Frazier*, 539 F.3d 646, 653 (7th Cir. 2008). There is no claim if the statement is "capable of innocent, nondefamatory construction." *Id.*; *Solaia Tech., LLC v. Specialty Pub. Co.*, 852 N.E.2d 825, 839 (Ill. 2006). The plaintiff must show that the statement is "concerning the plaintiff," *Madison*, 539 F.3d at 653; if the statement can be interpreted as referring to someone else, there is no liability, *see Solaia*, 852 N.E.2d at 839. There must be some requisite state of mind, and various privileges protect certain types of statements. *Lewis v. School District No. 70*, 523 F.3d 730, 745 (7th Cir. 2008). And only certain types of defamatory statements may subject the speaker to presumed (rather than actual) damages, specifically, those statements that are defamatory *per se*, where the "harm is obvious and apparent on its face." *Solaia*, 852 N.E.2d at 839.

Even if a speaker is liable for presumed damages,[4] juries and judges do not have

[4]"Presumed damages include damages for mental suffering, personal humiliation, impairment of professional reputation and standing in the community and for economic loss." *Leyshon v. Diehl Controls North America*, 946 N.E.2d 864, 874 (Ill. App. Ct. 2010).

free rein to impose presumed damages without limit. There are some established factors to take into account: the number of times the statement is published, the number of readers (or listeners) of the statement, the source of the speech (the more authoritative the speaker, the greater the damage from the false statement because of the audience's receptiveness to the statement), the severity of the derogatory statement, and the medium by which the statement is delivered. *Brown & Williamson Tobacco v. Jacobson*, 827 F.2d 1119, 1142 (7th Cir. 1987). With these general liability and damages principles in mind, the Court turns to the specific statements alleged in the complaint.

### A. Wikipedia Statements: Counts 1, 2, and 6

#### 1. Defamation *per se*

Counts 1 and 2 allege that the Wikipedia statements constitute defamation *per se*. Illinois recognizes five categories of statements that are defamatory *per se*. *Solaia Tech.*, 852 N.E.2d at 839. Two of these categories are (a) statements that impute a lack of integrity in performing employment duties and (b) statements that prejudice individuals in their professions. *Id*. According to Pitale, the Wikipedia entries both impute a lack of job-performance integrity (Count 1) and prejudice him in his profession (Count 2).

Specifically, in the American Career College entry, after descriptions of the American Career College's management team, the entry states:

> Both presidents report to Chief Operating Officer Anthony J. Pitale. He is the former owner and founder of Eldorado College and Orange County Business College. The schools were closed by the Department of Education due to high

> default rates after a battle with the regulators over questionable refund policies from 1990-1994.

R. 15, Exh. C, R. 5 ¶ 15. There are two problems with premising a defamation claim on the statement that "[t]he schools were closed by the Department of Education due to high default rates after a battle with the regulators over questionable refund policies from 1990-1994." First, the statement is equally capable of being interpreted to refer to persons other than Pitale, or to the "schools" generally, especially when viewed in the context of the rest of the Wikipedia entry. Most of the entry describes American Career College's educational programs, its history, and its management. *See* R. 15, Exh. C. To be sure, the entry mentions Pitale by name at the end of a section about the school's management, which precedes the allegedly defamatory statement. *Id.* ("Both presidents report to Chief Operating Officer Anthony J. Pitale. He is the former owner and founder of Eldorado College and Orange County Business College.") But that is the lone reference to Pitale in the entry, so when the allegedly defamatory statement follows that reference, all we know is that Pitale was the "former owner and founder" of those "schools" that were closed. Readers do not know whether Pitale was still connected to the schools when they closed, let alone whether Pitale was responsible for why the schools closed. To the extent that the statement can naturally be read as innocent or as defamatory, the tie goes to the speaker in the interest of protecting First Amendment expression. *See Muzikowski v. Paramount Pictures*, 477 F.3d 899, 904 (7th Cir. 2007); *Anderson v. Vanden Dorpel*, 667 N.E.2d. 1296, 1302 (Ill. 1996). Thus, the

American Career College entry, standing alone,[5] cannot be the basis for defamation because it may be construed as targeting other persons.

The second problem with Pitale's reliance on the American Career College entry is that it is capable of an innocent construction that does not impute lack of integrity in job performance or cause prejudice to Pitale's professional work, nor alleges specific facts that fall into those defamation *per se* categories. Remember that the statement says, "The schools were closed by the Department of Education due to high default rates after a battle with the regulators over questionable refund policies from 1990-1994." What *facts* are alleged in that statement? The "schools were closed by the Department of Education"—but did Pitale (if the statement was referring to him) do anything wrong to cause that closing? There were "high default rates"—again, there is no factual assertion that Pitale did anything to cause those rates. There was a "battle with the regulators"—"battle" could have a negative connotation, but it could equally be interpreted as describing a dispute with regulators, which would not be a defamatory accusation. There were "questionable" refund policies—but that is an opinion, not a factual assertion. Standing alone, the American Career College entry

[5]The "standing alone" qualifier is important because those readers who accessed the archived version of the entry through the blog post, R. 15, Exh. A, would be able to identify Pitale as the statement's target. The blog post explicitly names Pitale as having, among other things, "le[]d the schools amid a scandal around short changing the students," and then says that "all of this was posted on Wikipedia in July and documented on previous posts," immediately followed by the link to the archived versions of the Wikipedia entries. But only those readers of the blog post would have put two and two together, and in any event, as discussed *infra*, the American Career College entry can be read with an innocent construction.

does not state a defamation claim. This is the close scrutiny required by the First Amendment's commitment to free speech.

Next, Pitale complains about the Eldorado College entry in Wikipedia. This statement does not suffer from the same difficulty in discerning who is the target of the statement. The full two sentences in which the statement appears reads as follows:

> The college closed [on] September 11, 1997 after a financial scandal led to the revocation of its accreditation, as well as its eligibility to receive funds from its alumni and various charities. Mr. Pitale, defiant to the end, claimed that the school[']s failure was the result of "overzealous bureaucrats" versus any wrongdoing by the owner of the organization.

R. 15, Exh. B. In this context, the natural and obvious meaning of the statement is that it was Pitale who engaged in the "financial scandal" and "wrongdoing" that led to the college's loss of accreditation. After all, earlier in the Wikipedia entry,[6] Pitale is identified as the "founder/owner."

Nor can the El Dorado College statement be innocently construed as not suggesting wrongdoing, at least if reasonable inferences are drawn in Pitale's favor, as they must at this motion-to-dismiss stage. This statement can be interpreted as imputing a lack of integrity in performing job duties and prejudices Pitale in his profession. The terms "financial scandal" and "wrongdoing," and labeling Pitale's response to regulators as "defiant to the end," are all naturally interpreted as accusing

[6]Each statement must be interpreted within the context of the entire Wikipedia entry or blog post where it appears, just as the Court would consider a statement within the context of an entire newspaper article. *See Seith v. Chicago Sun-Times, Inc.*, 861 N.E.2d 1117, 1127 (Ill. App. Ct. 2007). A reasonable reader would read the entirety of the entries and the blog post, which are not very long.

Pitale of mismanaging Eldorado College to the point of loss of accreditation, loss of eligibility to receive funds from alumni and various charities, and closure. Holestine argues that this sentence somehow "credits Pitale," R. 27 at 4, but that is a strained interpretation given words like "scandal," "defiant to the end," and "wrongdoing." R. 15, Exh. B.

Moreover, the statement "can reasonably be interpreted as stating actual fact," not just merely an opinion. *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 882 N.E.2d 1011, 1022 (Ill. 2008); *Solaia*, 852 N.E.2d at 840. Three factors are considered to determine whether a statement is opinion or fact: (1) whether the statement has a precise meaning; (2) whether it is verifiable; and (3) whether its literary or social context suggests it is factual. *Madison*, 539 F.3d at 654 (citation omitted); *Imperial Apparel*, 882 N.E.2d at 1022. Courts consider these factors together, but emphasize verifiability. *Rose v. Hollinger Intern., Inc.*, 889 N.E.2d 644, 648 (Ill. App. Ct. 2008).

All three factors point toward the Eldorado College statement as a factual assertion, not opinion. The statement has a relatively precise meaning—that the school lost its accreditation and eligibility to receive funds, and why—and, as Pitale points out, R. 25 at 8, is verifiable. Although the term "financial scandal" may be imprecise in isolation, the preceding paragraph explicitly states that "student loan default rates" exceeding the maximum percentage set by the Department of Education led to the school's closure. R. 15, Exh. B. The overall context also suggests that the statement was intended as a statement of fact: Wikipedia is an open-source encyclopedia, primarily serving (or at least intending to serve) as a source of factual information

rather than as a forum for expressing opinion. Wikipedia strives to be a repository of facts, not opinions.[7] All in all, at this stage of the litigation, Counts 1 and 2 state a claim for defamation *per se* as to the Eldorado College entry.

**2. False Light**

Count 6 is a false light claim. The false light tort protects the "interest in being free from false publicity." *Moriarty v. Greene*, 732 N.E.2d 730, 741 (Ill. App. Ct. 2000). Under Illinois law, Pitale must establish three elements to state a false light claim: (1) Holestine placed him in a false light before the public; (2) a trier of fact could find the false light "highly offensive to a reasonable person"; and (3) Holestine acted with actual malice. *See Pope v. Chronicle Pub. Co.*, 95 F.3d 607, 616 (7th Cir. 1996); *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 209 (Ill. 1992); *Moriarty*, 732 N.E.2d at 741.

Although false light is a different cause of action than defamation *per se*, the analyses are similar because false light claims must also be "of and concerning" the plaintiff and are equally subject to the innocent construction rule. *Muzikowski*, 477 F.3d at 907 (the tests are "basically the same"); *Schivarelli v. CBS, Inc.*, 776 N.E.2d 693, 701 (Ill. App. Ct. 2002). Applying the same analyses from above, the American Career College entry can be innocently construed and therefore does not support a false light claim.

But the false light claim premised on the Eldorado College entry survives the motion to dismiss. Pitale has satisfied the first element because, as explained above,

---

[7]One of Wikipedia's "three core content policies" is "neutral point of view." http://en.wikipedia.org/wiki/Wikipedia:Neutral_point_of_view (Last accessed Feb. 27, 2012).

the statement does target Pitale as the wrongdoer. The statement was public because it appeared on Wikipedia, and Pitale alleges the statement is false. R. 5 ¶ 46. Pitale satisfies the second element because a jury could find a statement that implies professional irresponsibility to be highly offensive to a reasonable person. *Moriarty*, 732 N.E.2d at 741. *Moriarty* held that a jury could find a statement that a psychologist saw her job "as doing what the biological parents [of her child patient] instructed" highly offensive to a reasonable person because it implied she would disregard professional obligations. *Id.* As discussed above, the natural meaning of attributing Eldorado College's closing to a "financial scandal" similarly suggests that he disregarded professional obligations. As to the third element of the claim, Pitale adequately alleges that Holestine acted with actual malice. *Id.* ¶ 50. Thus, Count 6 survives to the extent it is based on the Eldorado College entry on Wikipedia.

**B. "Wall of Shame" Statements: Counts 3, 4, 5, and 7**

**1. Defamation *per se***

Counts 3, 4, and 5 allege that the "Wall of Shame" blog post comprised defamatory *per se* statements. Specifically, Pitale believes that the blog post accused him of committing a crime (Count 3), *Solaia*, 852 N.E.2d at 839, and also imputed a lack of integrity in his job performance (Count 4) and prejudiced Pitale in his profession (Count 5).

The statements at issue from the blog post are that Pitale "le[]d schools amid a scandal around short changing the students and state government on student refunds," R. 5 ¶ 24; R. 15, Exh. A, and that Eldorado College was "closed by the Department of

Education for student default rate violations that exceeded 25% for three consecutive years," R. 5 ¶ 25; R. 15, Exh. A. Additionally, the blog post states that Pitale engaged in "unsavory actions" and "inappropriate education management practices." R. 5 ¶ 23.

With regard to purported accusation of criminal conduct (Count 3), R. 5 ¶ 36, the Wall of Shame statements are capable of an innocent construction and therefore are not defamatory *per se*. For this category of defamation *per se*, the words must themselves denote criminal conduct. *Moore v. People for the Ethical Treatment of Animals, Inc.*, 932 N.E.2d 448, 457 (Ill. App. Ct. 2010). This standard has been applied strictly; for example, the statement that a person was a "reputed organized crime figure" was capable of innocent construction because it could be interpreted as stating he was believed to be a crime figure, and perhaps that belief was incorrect. *Salamone v. Hollinger Intern., Inc.*, 807 N.E.2d 1086, 1090-91 (Ill. App. Ct. 2004). Pitale does not identify the specific statements that he believes impute his commission of a crime. *Id.* ¶¶ 22, 34-36. None of the statements from the blog post explicitly allege criminal conduct; all can be innocently construed as criticizing Pitale's conduct without implying that his actions rose to the level of a crime. Count 3 must be dismissed.

But the Wall of Shame statements do qualify as other types of defamation *per se*, namely, they impute a lack of integrity in his job performance (Count 4) and prejudice him in his profession (Count 5). Viewed in the context of the entire blog post, which features a picture of Pitale at the top and discusses him by name throughout, the statements naturally and obviously refer to Pitale and impute that he lacked integrity in his professional duties and prejudice him in his profession. "Pitale le[]d the

schools amid a scandal around short changing the students and state government on student refunds," R. 15, Exh. A, specifically identifies Pitale and suggests that he cheated ("short changing") students and state governments. Pitale is also identified by name in the sentence preceding the statement "he ran two schools in the 90's which were closed by the Department of Education for student default rate violations that exceeded 25% for three consecutive years." *Id.*[8] These statements are defamatory (or more precisely, a jury reasonably could so find), and according to Pitale, all of these statements are false. R. 5 ¶¶ 38, 41.

Nor are the statements mere opinions rather than assertions of fact. Applying the test that sorts out opinions from factual assertions, the statements have a precise meaning (the first factor) because they describe what the "scandal" involved ("short changing the students and the state government on student refunds") and they are verifiable (the second factor) by examining refund records. The literary and social context of the statements (the third factor) is a closer question, but for now Pitale gets the benefit of reasonable inferences, and this factor could also support deeming these statements to be factual assertions rather than opinions. It is true that the statements appear on a blog, not on a site touted as an online encyclopedia. There is no generally-held view that blogs primarily deliver unadorned facts; on the contrary, a glance at sitemeter.com's top-visited-sites listing shows a wide variety of blogs, topped by a

[8]Although the statement regarding the Department of Education's closure of the schools, standing alone, could be innocently construed in the American Career College entry, *see supra*, the additional context in the Wall of Shame post takes this statement out of the realm of innocent construction.

celebrity gossip blog.[9] But the statements at issue here purport to provide a factual background on Pitale and describe his history. R. 15, Exh. A. Although the blog contains some language stating that it represents opinion, couching a fact as an opinion does not necessarily make it an opinion. *Madison*, 539 F.3d at 656; *Solaia*, 852 N.E.2d at 840. Even when statements appear on part of a website that is used to express opinion, statements will not be considered opinions when they imply actual facts. *Maxon v. Ottawa Pub. Co.*, 929 N.E.2d 666, 677-78 (Ill. App. Ct. 2010). *Maxon* held that a commenter's accusation that the plaintiff had bribed city officials could reasonably be interpreted as an assertion of fact, even though the statement appeared in the Comments section of an online newspaper article. *Id*. Here, the post is listed under the general subject heading "Opinion,"[10] but the statements at issue outright accuse Pitale in factual terms. R. 15, Exh. A. Moreover, the "About" self-description of the blog, *see* R. 15, Exh. A, states that the blog is meant to "collect the stories of those who were misled by the admissions teams" and that Holestine will try to "shed some light," *id*. When viewed in Pitale's favor at this stage of the litigation, these statements imply that the blog's purpose is to uncover and communicate facts rather than serve only as a platform to express opinion. Thus, these two Wall of Shame statements are actionable statements of fact.

---

[9]sitemeter.com's top visited site as of February 26, 2012 was perezhilton.com, a celebrity gossip blog.

[10]The site structure of the blog post was Home > Opinion, Southern California Schools > American Career College Executive Team – Wall of Shame #1.

In contrast, the statements accusing Pitale of "unsavory actions" and "inappropriate education management practices" are neither precise nor verifiable, and constitute assertions of opinion. Both statements are broad and could have multiple meanings because they do not identify specific actions and management practices, and what is "unsavory" and "inappropriate" to one person may be acceptable to another. Additionally, statements are not verifiable when they are "shapeless" and do not indicate where an investigation could begin. *Rose v. Hollinger Intern., Inc.*, 889 N.E.2d 644, 653 (Ill. App. Ct. 2008). *Rose* held that a statement that an employee had damaged a newspaper's finances was not verifiable because it did not indicate how the employee caused the damage and an investigation would require examining all aspects of the employee's duties. *Id*. These statements ("unsavory" and "inappropriate") similarly lack the specificity necessary for verification because they do not reference anything specific that could be investigated and would require examining all aspects of Pitale's employment. Thus, to the extent that Counts 4 and 5 rely on these latter statements, that portion of the claims are dismissed.

**2. False Light**

Count 7 seeks to assert a false light claim for the blog statements. In addition to mirroring the defamation analysis under the innocent construction rule, false light claims, like defamation claims, are also non-actionable for statements of opinion. *Brennan v. Kadner*, 814 N.E.2d 951, 959 (Ill. App. Ct. 2004); *Schivarelli v. CBS, Inc.*, 776 N.E.2d 693, 701-02 (Ill. App. Ct. 2002). Thus, to the extent that Count 7 relies on the statements "unsavory actions" and "inappropriate education management

practices," that aspect of the claim is dismissed. Count 7 does state a claim as to the other Wall of Shame statements. Pitale has adequately alleged actual knowledge of the statements' falsity and actual malice. R. 5 ¶¶ 54, 57. Furthermore, as discussed above, the statements are not mere assertions of opinion, nor are they capable of innocent construction (when reasonable inferences are drawn in Pitale's favor). Lastly, the statements imply professional irresponsibility, which a jury could find highly offensive to a reasonable person. Accordingly, the claim survives the motion to dismiss.

**V.**

Counts 1, 2, and 6 state a claim as to the Eldorado College entry, but are dismissed to the extent that the claims rely on the American Career College entry. Count 3 is dismissed. Counts 4, 5, and 7 state claims in part, as explained above. Accordingly, Holestine's motion to dismiss [R. 14] is granted in part and denied in part.

ENTERED:

Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: February 27, 2012